**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Pontiaki Special Maritime Enterprise, | |
| Plaintiff, | C.A. No. 1:16-cv-00247 (LPS) |
| v. | |
| Tadema Shipping and Logistic Inc. (a/k/a Tadema Shipping & Logistic Inc., a/k/a Tadema Shipping & Logistics Inc.), | In Admiralty |
| Taleveras Petroleum Trading B.V. (a/k/a Talaveras Petroleum Trading, a/k/a Taleveras Petroleum Trading, a/k/a Taleveras Petroleum Trading Ltd.), | |
| and | |
| Taleveras Petroleum Trading DMCC, | |
| Defendants, | |
| and | |
| Atlantic Trading & Marketing, Inc., | |
| BP Products North America Inc., | |
| Chevron U.S.A. Holdings Inc., | |
| Chevron U.S.A. Inc., | |
| George E. Warren Corporation, | |
| J.P. Morgan & Co., Inc., | |
| PBF Energy Company LLC, | |
| PBF Energy Inc., | |
| PBF Energy Partners LP, | |
| PBF Holding Company LLC, | |
| RIL USA Inc., | |

Shell Trading (US) Company,

and

Vitol Inc.,

       Garnishees.

**DEFENDANT TALEVERAS DMCC'S MOTION AND INCORPORATED MEMORANDUM TO DISMISS PONTIAKI'S SECOND AMENDED VERIFIED COMPLAINT AND REQUEST FOR ISSUANCE OF WRITS OF MARITIME ATTACHMENT AND GARNISHMENT**

**THE ROSNER LAW GROUP LLC**

*/s/ Fredrick B. Rosner*
Frederick B. Rosner (DE 3995)
824 Market Street, Suite 810
Wilmington, DE 19801
Tel.: (302) 777-1111
rosner@teamrosner.com

**CLYDE & CO US LLP**
John R. Keough, III
The Chrysler Building
405 Lexington Avenue 16th Floor
New York, New York 10174
(212) 710-3900
John.Keough@clydeco.us

*Attorneys for Defendant*
*Taleveras Petroleum Trading DMCC*

## TABLE OF CONTENTS

Preliminary Statement ..................................................................................................1

Factual Summary .........................................................................................................2

Argument .....................................................................................................................2

   I.   STANDARD OF REVIEW ...................................................................................2

      A.   Under Rule 8, the Factual Allegations Must
           State A Claim Plausible on its Face ....................................................2

      B.   To Adequately Plead Alter Ego Liability, the
           Plaintiff Must Plead with Particularity that the
           Corporation Actually Functioned as a Single Entity:
           No Such Allegations Exist Here .........................................................3

      C.   Rule 12(b)(6) Standard .......................................................................4

  II.   PONTIAKI HAS FAILED TO SATISFY THE
       PLEADING STANDARD OF RULE 8, AND
       THE SECOND AMENDED COMPLAINT THUS
       SHOULD BE DISMISSED UNDER RULE 12(b)(6) ...................................5

 III.   PONTIAKI FAILS TO ALLEGE THE ALTER EGO
       FACTORS WITH THE REQUIRED SPECIFICITY ..................................8

      A.   Gross Undercapitalization ..................................................................9

      B.   Siphoning of Funds from Debtor
           Corporations by the Dominant Stockholder .....................................10

      C.   Nonfunctioning Directors ..................................................................13

      D.   Incorporation in a Jurisdiction That
           Requires Fewer Corporate Disclosures
           Does Not Suggest Improper Purpose ................................................14

      E.   Failure to Observe Corporate Formalities
           and Mere Facade Of the Dominant Stockholder ..............................18

CONCLUSION .............................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................2, 3

*Austral Asia Ptd. Ltd. v. SE Shipping Lines Pte. Ltd.*,
No. 12-1600, 2012 WL 2567149 (E.D. La July 2, 2012) ...........................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................4

*Bistrian v. Levi*,
696 F.3d 352 (3d Cir. 2012)........................................................................................2

*Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*,
No. 08 Civ. 2991 (RJH), 2009 WL 3076094 (S.D.N.Y. Sept. 28, 2009) .......................3, 7, 19, 20

*Energy Marine Services, Inc. v. DB Mobility Logistics AG*,
No. 15-24-GMS, 2016 WL 284432 (D. Del. Jan. 22, 2016) ................................ *passim*

*Kiobel v. Royal Dutch Petroleum*,
621 F.3d 111 (2d Cir. 2010)........................................................................................3

*Kirno Hill Corp. v. Holt*,
618 F.2d 982 (2d Cir. 1980)........................................................................3, 6, 10, 14

*LIG Ins. Co. v. Inter-Florida Container Transp., Inc.*,
No. 12-20990-CIV, 2013WL 4516104 (S.D. Fla. Aug. 23, 2013) .............................12

*MS "Taga Bay" GmbH & Co. Containerschiff KG v.*
*SA Independent Liner Services Pty Ltd.*,
No. 08 Civ. 8855 (LLS), 2009 WL 2222922 (S.D.N.Y. July 24, 2009).............................. *passim*

*Pearson v. Component Tech. Corp.*,
247 F.3d 471 (3d Cir. 2001)........................................................................................3

*Sea Metropolitian, S.A. v. DGM Commodities Corp.*,
13-CV-1521(DRH), 2013 WL 399022 (E.D.N.Y. Aug. 2, 2013) ...............................11

*Williams v. McAllister Bros. Inc.*,
534 F.2d 19 (2d Cir. 1976).........................................................................6, 11, 14

**Statutes**

DEL. CODE tit. 8, ch. 1, §§ 101-102 ......................................................16, 17

**Other Authorities**

Fed. R. Civ. P. 8........................................................................................................................2, 5

Fed. R. Civ. P. 12(b)(6)...........................................................................................................4, 5, 8

Fed. R. Civ. P. E(2)........................................................................................................................4

**Preliminary Statement**

Defendant, Taleveras Petroleum Trading DMCC ("Taleveras DMCC"), by its attorneys Clyde & Co US LLP and The Rosner Law Group LLC, respectfully submits this Motion and Incorporated Memorandum to Dismiss Pontiaki Special Maritime Enterprise's ("Plaintiff" or "Pontiaki") Second Amended Verified Complaint and Request for Issuance of Writs of Maritime Attachment and Garnishment pursuant to Federal Rule of Civil Procedure 12(b)(6). Taleveras DMCC submits this memorandum pursuant to this Court's Order (D.I. 61) granting Taleveras DMCC's Motion for Restricted Appearance, and continues to raise all defenses, rights, and claims raised in its prior motions, including its motion to vacate and related memorandum (D.I. 58, 59) and without waiving its affirmative defenses of lack of personal jurisdiction, improper venue, insufficient service of process, and failure to join a proper party.

The alleged facts require dismissal under the rule in *Energy Marine Services, Inc. v. DB Mobility Logistics AG*, No. 15-24-GMS, 2016 WL 284432 (D. Del. Jan. 22, 2016), and if anything are more threadbare and conclusory than the allegations the court there found insufficient. The factors cited by the Court at the June 7 hearing on Taleveras DMCC's motion to vacate remain unsupported by any specific allegation of fact. Exhibit A, Transcript of June 7, 2016 Hearing, at 43:21-43:15. Indeed the public records of the British Virgin Islands ("BVI") court show that both of the alleged winding up proceedings relied on by Pontiaki to show "insolvency" were resolved by settlement payment in April 2016 and thus refute the wild speculation of plaintiff's allegations that two winding up proceedings in the BVI court means that Tadema Shipping and Logistic Inc. ("Tadema") and Taleveras Petroleum Trading B.V. ("Taleveras BV") were "grossly undercapitalized."

Likewise, by plaintiff's own allegations, the judgment in the United Kingdom is not being evaded but is the subject of a motion to vacate for lack of proper notice, among other grounds.  D.I. 81 at ¶ 41; *see also* Exhibit B, Witness Statement of Edward Mills-Webb.

Nor is there any plausible inference to support Pontiaki's conclusory allegation of a "manipulation of corporate relationships" or "changing names of entities" to avoid paying that judgment, by Talaveras DMCC or anyone else.  There is no evidence or allegation that makes a plausible showing of insolvency or "the sale of assets for no consideration" by any defendant, or of "a lack of functioning officers and directors."  Pontiaki's wholly speculative allegation that a corporate director was deceased, merely questioning whether his signature on a corporate record was genuine, *see* D.I. 81 at ¶ 31, overlooks that the director bears the same name as his father (as further confirmed by the director's date of birth on his passport, a copy of which is attached as Exhibit C, Passport of Dickens Sanomi, hereto).  *See also* D.I. 81-2 at 8.

### Factual Summary

Taleveras DMCC hereby incorporates by reference the statement of facts set forth in Taleveras DMCC's Memorandum in Support of its Motion to Vacate Order of Maritime Attachment and To Dismiss Complaint.  D.I. 59 at 3-5.

### Argument

### I.

### STANDARD OF REVIEW

### A.     Under Rule 8, the Factual Allegations Must State a Claim Plausible on its Face.

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide sufficient factual allegations to state a claim to relief that is plausible on its face.  *Energy Marine*, 2016 WL 284432, at *2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In cases that allege fraud - - an allegation that is inherent in an alter ego claim - - "a party must state with particularity the circumstances constituting fraud or mistake." *Energy Marine*, 2016 WL 284432, *2 (quoting Fed. R. Civ. P. 9(b)).

"The touchstone of the pleading standard is plausibility."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  The Rule requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with'" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B.    To Adequately Plead Alter Ego Liability, the Plaintiff Must Plead**
**with Particularity that the Corporation Actually Functioned as a**
**Single Entity: No Such Allegations Exist Here.**

Under federal law, "corporate entities are presumed to be distinct." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010); *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, No. 08 Civ. 2991 (RJH), 2009 WL 3076094, at *2 (S.D.N.Y. Sept. 28, 2009).  The party seeking to challenge that presumption bears the burden of adducing proof sufficient to do so.  *Kiobel*, 621 F.3d at 195.

Under an alter ego analysis, the plaintiff must prove that, "in all aspects of the business, the . . . corporation actually functioned as a single entity."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).  The plaintiff must also prove that "the corporate form was abused, with a showing akin to fraud." *Energy Marine*, 2016 WL 284432, at *3 (citing

*Trustees of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 194 n.7 (3d Cir. 2003)). Sole ownership of a corporation is insufficient to pierce the corporate veil as a matter of law. *See Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980). "Actual domination, rather than the opportunity to exercise control, must be shown." *MS "Taga Bay" GmbH & Co. Containerschiff KG v. SA Independent Liner Services Pty Ltd.*, No. 08 Civ. 8855 (LLS), 2009 WL 2222922, at *2 (S.D.N.Y. July 24, 2009) (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69-70 (2d Cir. 1996) (internal quotation marks omitted)).

In analyzing an alter ego claim, the Third Circuit weighs the following factors: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of debtor corporation; (5) siphoning of funds from the debtor corporation by the dominant stockholder; (6) nonfunctioning of officers and directors; (7) absence of corporate records; and (8) whether the corporation is merely a facade for the operations of the dominant stockholder. *Energy Marine*, 2016 WL 284432, at *3 (citing *Pearson*, 247 F.3d at 484-85). Moreover, U.S. courts have long recognized that prudence requires care in considering alter ego claims against affiliates of maritime defendants based on loose allegations of association, as here, in maritime attachment proceedings:

> However liberal the attachment procedures under Rule B may be, courts should not indiscriminately allow attachment of the property of every affiliate of a maritime defendant simply upon an allegation that such entity is associated with the proper defendant. Rather, it is prudent to require a showing that there is at least some basis for believing that the attachment will reach only those additional entities that are in fact alter egos of the maritime defendant.

*MS "Taga Bay,"* 2009 WL 2222922, at *3 (quoting *Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.*, No. 08 Civ. 8817(GEL), 2009 WL 464202, at *2 (S.D.N.Y. Feb. 24, 2009)). Thus, a complaint alleging alter ego in the maritime attachment context must plead with particularity.

*See Energy Marine*, 2016 WL 284432, at *3 (citing *Lutyk*, 332 F.3d at 194 n.7); Fed. R. Civ. P. E(2).

C.     **Rule 12(b)(6) Standard**

Where the plaintiff "fail[s] to state a claim upon which relief can be granted," Rule 12(b)(6) provides for dismissal of that claim.  Fed. R. Civ. P. 12(b)(6).  "In considering a motion to dismiss, the court 'accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Energy Marine*, 2016 WL 284432, at *2 (quoting *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  Although the court must take all factual allegations as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a complaint requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted).

## II.

### PONTIAKI HAS FAILED TO SATISFY THE PLEADING STANDARD OF RULE 8, AND THE SECOND AMENDED COMPLAINT THUS SHOULD BE DISMISSED UNDER RULE 12(b)(6)

Pontiaki's second amended complaint fails to plead adequately that ***Taleveras DMCC*** is the alter ego of Tadema and Taleveras BV as a matter of law.  *Energy Marine*, 2016 WL 284432, at *3.  Pontiaki attempts to connect Talveras DMCC to Tadema and Taleveras BV through the so-called "Taleveras Group," which plaintiff has added as a new defendant despite failing to allege that the "Taleveras Group" is a business entity existing under the laws of any country.

The second amended complaint fails to identify the "Taleveras Group." D.I. at ¶¶ 5-10.  Indeed, the complaint fails to allege any country of incorporation, address or corporate connection to Tadema, Taleveras BV and Taleveras DMCC.  Instead, it alleges in conclusory terms that Tadema, Taleveras BV, and Taleveras DMCC are all alter egos of the Taleveras Group.  *Id.* at ¶¶ 6-8, 10.  Nor has Pontiaki requested that a summons issue to the Taleveras Group.

Pontiaki's failure to identify the Taleveras Group with any specificity raises doubt whether the second amended complaint alleges that "Taleveras Group" is an individual corporation or is in fact merely the name of a group of related, but independent companies.  The alleged quote from Ventures Africa Magazine cited in paragraph 28 of the second amended complaint suggests the latter, stating that the Taleveras Group is a "Nigerian energy, power and construction conglomerate."  *Id.* at ¶ 28.

Pontiaki essentially alleges that the Taleveras Group is the alter ego of Taleveras DMCC, Tadema, and Taleveras BV, which in turn allegedly makes Taleveras DMCC an alter ego of Tadema and Taleveras BV.  Such vague and broad allegations, however, fail to support a plausible showing of alter ego liability as a matter of law.  First, Pontiaki has failed to allege plausibly that Taleveras DMCC exercised actual domination over Tadema and Taleveras BV.  *See MS "Taga Bay*," 2009 WL 2222922, at *3 ("Actual domination, rather than the opportunity to exercise control, must be shown.").  Only two sets of allegations seek to connect Taleveras DMCC to Taleveras BV and Tadema.  The first set alleges common ownership of the three entities.  D.I. 81 at ¶¶ 6-8, 22, 26, 27, 36.  These unsupported and generalized allegations, however, are conclusory assertions with no factual basis specified.  Further, even if Taleveras DMCC, Taleveras BV and Tadema had common ownership and directors, such allegations fail to

6

establish alter ego liability as a matter of law.  *Kirno Hill*, 618 F.2d at 985; *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 21 (2d Cir. 1976).

The second set alleges that Taleveras DMCC took over Taleveras BV's and Tadema's business operations when Taleveras BV and Tadema became insolvent.  D.I. 81 at ¶¶ 28, 33, 37, 42-46.  In support, Pontiaki relies on Exhibits D and E of its second amended complaint.  First, there is no specific allegation to support the conclusory allegation that Taleveras BV or Tadema became insolvent.  Second, paragraph 42 of the second amended complaint identifies Exhibit D as import records, which allegedly show that, "until September 30, 2015, Taleveras BV was the shipper of thousands of barrels of condensate to consignees in the United States." *Id.* at ¶ 42.  The alleged "import records" list the consignee, shipper, and arrival date of various cargos.  Neither Exhibit D nor the second amended complaint explains the source of this list.  Thus, Exhibit D and paragraph 42 amount to nothing more than conclusory statements unsupported by facts.

Exhibit E lists transfers allegedly made by the Taleveras Group.  Those records do not list *Taleveras DMCC*.  There is no allegation or evidence in those documents that any of the alleged transactions were "anything but an arms length transaction exhibiting due regards for proper corporate formalities." *See Emeraldian*, 2009 WL 3076094, at *4-5.  As such, Pontiaki's allegation that these documents evidence the Taleveras Group's failure to observe corporate form remains wholly unsubstantiated and conclusory.  D.I. 81 at ¶ 47.  However, even if these documents were construed to suggest an improper relationship between the Taleveras Group and Taleveras BV and Tadema, which is denied, the documents make no mention of Taleveras DMCC, and thus do not evidence any relationship with Taleveras DMCC.  Additionally, as the court in *Energy Marine* recognized, a close relationship between two entities is insufficient to

7

connect those two entities to a third entity without evidence of an alter ego relationship with that third entity:

> Even if the Libyan company was an alter-ego of Schenker SA, there is no evidence that Schenker Libya was an alter-ego of DBMLAG.  Multiple layers of subsidiaries separate DBMLAG from both Schenker SA and Schenker Libya. . . . EMS has provided no basis for the court to infer an alter-ego relationship for any of the entities between Schenker SA and DBMLAG.

2016 WL 284432, at *3.  Here, as in *Energy Marine*, specific allegations of such evidence are missing from the pleading.  In that case, the vessel owner who had chartered its vessel to Schenker Libya sought to attach property of DBMLAG, a remote subsidiary of Schenker Libya. *Id.* at *1.  DBMLAG owned a 100% interest in Schenker AG, which in turned owned a 100% interest in Schenker SA.  *Id.*  Schnenker SA owned a 100% interest in Medtrans International SA, which in turn owned a 65% interest in Schenker Libya.  *Id.*  In addition to DBMLAG's ownership of its subsidiaries, DBMLAG and its four subsidiaries shared common branding, logos, and email addresses and there appeared overlap in personnel between Schenker SA and Schenker Libya.  *Id.*  Even though the common branding suggested a close business relationship between all of the subsidiaries, the court held that there was no evidence that Schenker Libya was an alter-ego of DBMLAG - - even if there was some evidence to suggest that Schenker SA exercised some degree of control over Schenker Libya.  *Id.* at *3.  Dismissing the vessel owner's complaint pursuant to Rule 12(b)(6), the court stated: "The alleged multilevel alter-ego relationship amounts to 'naked assertion[s] devoid of further factual enhancement' and is therefore insufficient to meet the minimum pleading requirements." *Id.* (citing *Ashcroft*, 556 U.S. at 678).

Likewise, as in *Energy Marine*, Pontiaki here has alleged a connection between Tadema and Taleveras BV through their alleged affiliate, the Taleveras Group.  Under the rule in

*Energy Marine*, the conclusory assertion that Taleveras DMCC, Tadema, Taleveras BV and the Taleveras Group share common ownership is insufficient to show alter ego liability as a matter of law.   Thus, Pontiaki's attempt to establish alter ego liability through an alleged vague connection to a group of companies named the Taleveras Group misses the mark.

**III.**

**PONTIAKI FAILS TO ALLEGE THE ALTER EGO
FACTORS WITH THE REQUIRED SPECIFICITY**

Of the eight factors that courts in this Circuit consider in assessing alter ego liability, Pontiaki attempts to address six of those factors: gross undercapitalization, siphoning of funds from debtor corporations by the dominant stockholder, nonfunctioning directors, absence of corporate records, failure to observe corporate formalities, and the corporation is merely a facade for the dominant stockholder.  *Energy Marine*, 2016 WL 284432, at *3.   Despite listing six of the eight factors, Pontiaki alleges nothing more than assertions that are conclusory and vague, lack relevance to an alter ego analysis, are factually inaccurate, and/or lack plausibility. Moreover, Pontiaki continues to couch its allegations as made "on information and belief" without further basis for support.  *See* D.I. 81 at ¶¶ 26, 27, 28, 31, 34, 36, 37, 38, 41, 42, 45, 46. Without an additional basis, those allegations are insufficient to justify the attachment of Taleveras DMCC's property and must be disregarded as a matter of law.  *See MS "Taga Bay,"* 2009 WL 2222922, at *2 (vacating Rule B attachment order and finding allegations made on "information and belief" with no basis to support such allegations insufficient to justify attachment of defendants' property).   Each of the factors alleged by Pontiaki is addressed in turn:

**A.**     **Gross Undercapitalization.**

Pontiaki includes only two allegations under the heading "Gross Undercapitalization."  D.I. at ¶¶ 22-23.  Although Pontiaki alleges that Tadema and Taleveras

BV are grossly undercapitalized, Pontiaki alleges that it is the *Taleveras Group* that "controls" those two entities.  No control by Taleveras DMCC is alleged.

Tadema and Taleveras BV are not facing liquidation as Pontiaki has alleged in Paragraph 22.  D.I. 81 at ¶ 22.  A liquidation proceeding was initiated against Tadema and Taleveras BV in the BVI as alleged, D.I. 82 at 18-19, but the parties reached a settlement on April 27, 2016, and the winding up applications were withdrawn.  *See* Exhibits D and E, High Court of Justice, BVI Orders.  Thus, the BVI proceedings do not evidence gross undercapitalization of Tadema and Taleveras BV as alleged.

Further, the two judgments alleged in paragraph 23 are against Tadema, not Taleveras DMCC.  Taleveras DMCC is not even mentioned in that paragraph.  Absent specific allegations of a relationship with Taleveras DMCC, the alleged relationship between Tadema and Taleveras BV provides no basis to infer that Taleveras DMCC is the alter ego of those two entities as a matter of law.  *See Energy Marine*, 2016 WL 284432, *3.  As discussed above, even the addition of the Taleveras Group as the alleged alter ego of Tadema, Taleveras BV, and Taleveras DMCC fails to establish any direct connection between Taleveras DMCC and Tadema and Taleveras BV, which the rules in *Energy Marine* and *MS "Taga Bay"* require to show that Taleveras DMCC is their alter ego.  *See Energy Marine*, 2016 WL 284432, at *3; *MS "Taga Bay,"* 2009 WL 2222922, at *3.

**B.**     **Siphoning of Funds from Debtor Corporations by the Dominant Stockholder.**

Pontiaki does not allege that Taleveras DMCC is siphoning funds from Taleveras BV and Tadema.  D.I. 81 at ¶¶ 24-30.  Thus, as to Taleveras DMCC, Pontiaki has not met the pleading burden for this factor.

Instead, Pontiaki alleges that Igho Sanomi and the Taleveras Group have under-capitalized Taleveras BV and Tadema.  D.I. 81 at ¶ 25, 28.  This allegation is conclusory and is not supported by any facts alleged in the second amended complaint, particularly since no alleged facts specify that Taleveras BV and Tadema are undercapitalized.  *See* Exhibits D-E.  Neither of the two articles quoted in paragraph 28 mention Tadema, Taleveras BV or Taleveras DMCC.  Further, the articles evidence no wrongdoing on the part of the Taleveras Group and are immaterial to the alleged alter ego liability of Taleveras DMCC.

Further, Pontiaki's allegation that "Tadema, Taleveras BV, and Taleveras DMCC share common ownership, director, and/or management and are otherwise controlled by the same person: Igho Charles Sanomi II," even if true, does not constitute sufficient evidence required to pierce the corporate veil as a matter of law.  *See Kirno Hill*, 618 F.2d at 985 (concluding that sole ownership of a corporation is insufficient to pierce the corporate veil).  Nor does the allegation that "Tadema, Taleveras BV, and Taleveras DMCC are subsidiaries of, and otherwise owned, operated, and controlled by, Igho Charles Sanomi II and/or his Taleveras Group" constitute sufficient evidence.  *See Williams,* 534 F.2d at 21 ("Ownership by a parent of all its subsidiary's stock has been held an insufficient reason in and of itself to disregard distinct corporate entities.").

This is particularly true in the maritime industry where "overlap of ownership, officers, directors, and other personnel is not unusual."  *Austral Asia Pte. Ltd. v. SE Shipping Lines Pte. Ltd.*, No. 12-1600, 2012 WL 2567149, at *3 (E.D. La July 2, 2012).  "Actual domination, rather than the opportunity to exercise control, must be show." *MS "Taga Bay*," 2009 WL 2222922, at *2.

11

As the district court recognized in *Sea Metropolitan, SA v. DGM Commodities Corp.*:

> [R]eference to *Kirno Hill* indicates that simply being the "sole owner" of a corporation is insufficient to "justify piercing the corporate veil" absent evidence that the owner used the "corporate form . . . primarily [to transact his own] personal business [and/or to promote] a fraudulent end." *Id.* at 985. . . . Something more, as explained in *Kirno Hill*, is needed. That "something more" calls for evidence linking Elua's domination to harm sustained by SMSA.

13-CV-1521(DRH)(AKT), 2013 WL 3990922, at *3 n.7 (E.D.N.Y. Aug. 2, 2013) (citing *Kirno Hill*, 618 F.2d at 985) (all alterations except second ellipse in original). Thus, paragraphs 26, 27, 29 and 30 are wholly irrelevant to establishing an alleged alter ego relationship between Tadema and Taleveras BV with Taleveras DMCC. Applying federal maritime law recognizing that causation must be shown in the alter ego analysis, Pontiaki also fails to allege that any action by Taleveras DMCC directly caused any harm alleged by Pontiaki, and thus fails to show the "something more" required to pierce the corporate veil as a matter of law. *Id.*[1]

Further, Pontiaki's own evidence contradicts its allegations that Igho Charles Sanomi solely owns, directs, and/or manages and otherwise controls Tadema and Taleveras BV. The Tadema resolution attached to Pontiaki's second amended complaint as Exhibit C is signed by two directors: Igho Charles Sanomi and Leonard Awolo Kwenua; and the Taleveras BV resolution attached to Pontiaki's second amended complaint as Exhibit B is signed by four directors: Igho Charles Sanomi, Eghonghon Sanomi, Dickens Ogheneruemu Patrick Sanomi, and Bola Emmanuel. D.I. 81-2 at 7-9. Pontiaki's own exhibits show that Tadema and Taleveras BV are not solely owned, directed, managed, and controlled by Igho Charles Sanomi, and thus contradict its second amended complaint's allegations.

---

[1] *See also LIG Ins. Co. v. Inter-Florida Container Transp., Inc.*, No. 12-20990-CIV, 2013 WL 4516104, at *6-7 (S.D. Fla. Aug. 23, 2013), *aff'd*, 564 Fed. App'x 495 (11th Cir. 2014).

Pontiaki also alleges that Tadema has two additional judgments against it pending in the U.K. High Court.  D.I. 81 at ¶¶ 23-24. Yet these two alleged judgments are irrelevant to this proceeding.  Neither of these judgments as alleged has anything to do with Taleveras DMCC.  Their alleged existence thus is not probative of whether Taleveras DMCC is an alter ego of Tadema and Taleveras BV.  Pontiaki's attempt to connect the existence of these two alleged judgments to the judgment against Pontiaki is misleading and immaterial.

Further, paragraph 24 mischaracterizes the judgment that Pontiaki has obtained against Taleveras BV and Tadema in the High Court of Justice ("U.K. action") and contradicts paragraph 13 of Pontiaki's own complaint.  Throughout this proceeding, Pontiaki has suggested that Taleveras BV and Tadema have sought to evade a judgment issued against them in the U.K. action. Pontiaki has failed to mention, however, that the judgment is actually a *default* judgment entered by the court after Taleveras BV and Tadema failed to make an appearance.  Taleveras BV and Tadema have since made an appearance in the U.K. action and have maintained that they had not been served with a complaint and had no knowledge of those proceedings or the default judgment until April 13, 2016, when they read about the Delaware action in Tradewinds.  *See* Exhibit B at ¶4.  The default judgment is now being contested on the basis that (1) Pontiaki was not a party to the charter and therefore lacks standing, (2) service was not proper, (3) even if Tadema and Taleveras BV had been properly served, the claim was filed after the time bar had run, and (4) Tadema was entitled to cancel the charter pursuant to the contract's *force majeure* provision given the political volatility in Venezuela at the time the vessel was scheduled to arrive.  *Id.* at ¶¶ 10-15, 17-18, 20.  Thus, Pontiaki's suggestion that Tadema and Taleveras BV are evading the default judgment is not only misleading, but factually incorrect.  Further, the allegations that Tadema and Taleveras BV relocated from the British West Indies to the British

Virgin Islands for improper purposes, including to avoid payment on the Pontiaki default judgment, are misleading, conclusory statements with no basis in fact.  D.I. 81¶¶ at 32-34.

## C.  <u>Nonfunctioning Directors.</u>

> In support of the "nonfunctioning directors" factor, Pontiaki alleges:
>
> 31.  Among the other named directors is an individual named Dickens Ogheneruema Patrick Sanomi, who - - on information and belief - - is the late father of Mr. Sanomi.  On information and belief, Mr. Patrick Sanomi was deceased long before the August 26, 2015 resolution was issued in which Taleveras BV is identified as a director of Tadema.
>
> 32.  In support of Tadema's re-domiciling from the British West Indies to the British Virgin Island, a corporate resolution was issued in which Taleveras BV is identified as a director of Tadema. **Exhibit C** hereto.
>
> 33.  On or about the time Taleveras BV was re-domiciling itself and before the winding up and insolvency proceedings were commenced in the British West Indies and the British Virgin Island, respectively, Taleveras BV began using the address of Taleveras DMCC on bills of lading where Taleveras BV was identified as the shipper.

D.I. 81 at ¶¶ 31-33.

Even if viewed in a light favorable to Pontiaki, paragraphs 32 and 33 do not allege facts that establish alter ego liability.  Overlap of ownership and directors is common in the marine industry and is insufficient to disregard corporate separateness and thus establish alter ego liability, as discussed in detail above.  *Kirno Hill*, 618 F.2d at 985; *Williams*, 534 F.2d at 21. Additionally, even if Taleveras BV referred to use of a Taleveras DMCC address on bills of lading, such use is not necessarily inconsistent with a proper regard for corporate separateness and does not evidence actual domination required to establish alter ego liability.  *MS "Taga Bay*," 2009 WL 2222922, at *3.  Pontiaki for some reason fails attach any of these alleged bills

of lading as an exhibit to the second amended complaint.  Additionally, the second amended complaint alleges that Taleveras DMCC and Taleveras BV's Dubai branch, although located in the same building, actually have separate office spaces.  *See infra*, Section III(D); Exhibit F, DMCC Business Directory.

Further, the allegation in paragraph 31 is not just misleading - - it is actually wrong.  The "Dickens Sanomi" listed on the August 26, 2015 resolution is not Igho Sanomi's father, but is instead his brother, who is alive, and has the same name as their deceased father. *See* Exhibit C.  Blatant errors such as this call into question the plausibility of each allegation in the second amended complaint that is based "on information and belief." *See MS "Taga Bay,"* 2009 WL 2222922, at *2.

**D. Incorporation in a Jurisdiction That Requires Fewer Corporate Disclosures Does Not Suggest Improper Purpose.**

To establish an absence of corporate records, Pontiaki alleges that "[o]n information and belief, the purpose behind the re-domiciling moves by Tadema and Taleveras BV from the British West Indies to the British Virgin Islands – was to evade their respective creditors and seek more favorable insolvency protections."  D.I. 81 at ¶ 34.  Once again, this conclusory and baseless allegation has nothing to do with corporate records and does not even mention Taleveras DMCC.  Even if taken as true, which Taleveras DMCC reserves the right to deny, seeking residency in a country with more favorable insolvency protections, is not evidence that Taleveras BV and Tadema are alter egos of each other, or of Taleveras DMCC and the undefined "Taleveras Group."

Under this factor, Pontiaki also alleges that (1) Taleveras DMCC, Tadema, and Taleveras BV operate in jurisdictions where public corporate disclosures are not required; (2) the Taleveras Group owns 100% of Taleveras DMCC; and (3) Tadema, Taleveras BV, and

Taleveras DMCC are the same company for all intents and purposes and simply operate under different trading names. *Id.* at ¶¶ 35-37. As evidence of this last conclusory allegation, Pontiaki alleges that the Business Directory of the Multi Commodities Center listed Taleveras DMCC and "Taleveras Petroleum Trading BV (DMCC Branch)" at the same address in Dubai. *Id.* at ¶ 37. Again, this allegation is misleading and wrong. According to The Business Directory of the Dubai Multi Commodities Center, Taleveras DMCC is located at 1104-**18**, Reef Tower, Jumeriah Lake Towers, Dubai, UAE, while Taleveras BV (DMCC Branch) is located at 1104-**15**, Reef Tower, Jumeirah Lakes Towers, Dubai, UAE - - in other words, Taleveras DMCC and Taleveras BV's Dubai branch have separate offices in the same building. *See* Exhibit F. The fact that two affiliates have separate office spaces in the same building does not suggest an improper relationship as distinguished from an affiliated but separate relationship.

Despite being listed under the heading "Absence of Corporate Records," not one of these allegations, even if taken as true, actually alleges that Taleveras DMCC, Tadema and Taleveras BV have an absence of corporate records. At best, Pontiaki has alleged that Taleveras DMCC, Tadema, and Taleveras BV are incorporated in countries that do not require corporate documents *to be made public*. *Id.* at ¶ 35. By contrast, Pontiaki fails to mention that Delaware qualifies among such jurisdictions in the world with the least transparency and greatest corporate security. Under Delaware law, to register for incorporation, an entity need only file a certificate of incorporation with the Delaware State Department that lists (1) the name of the corporation, (2) the address of the corporation, (3) the nature of the business or purposes to be conducted or promoted, (4) the total number of stock shares, if any, (5) the name and mailing address of the incorporator, and (6) the name and address of persons serving as directors. DEL. CODE tit. 8, ch. 1, §§ 101-102. The names of the owners and shareholders are not required. Information related

to the corporation's capitalization or banking relationships is also not required.  None of this information is posted on the Delaware's online corporation database.

    To stay active, a Delaware corporation need only pay an annual business entity tax and file an annual report, which requires the corporation to list (1) the location of its registered office in Delaware, (2) name of the agent for service of process, (3) the corporation's principal place of business, (4) names of directors, (5) number of stock shares, if any, (6) facts entitling it to tax exempt status, if any, and (7) any schedules required to ascertain the annual franchise tax due.  *Id.* at tit. 8, ch. 5, § 502(a).  Like the requirements for incorporation, the names of the owners and shareholders are not required in the annual report.  Information related to the corporation's capitalization or banking relationships is also not required.  None of this information is posted on the Delaware's online corporation database.

    Delaware's online public database posts only the following corporate information:



Additional information, such as the status and tax and history information can be requested for a small fee, but the available information is no more than what Delaware requires a corporation to submit.  Therefore, like the alleged requirements under UAE and BVI law, Delaware does not require a corporation to disclose its owners or its shareholders.  Nor does Delaware require the

17

corporation to publish balances sheets or list the beneficiary information for any foreign payments or transfers made by the corporation. Thus, under Pontiaki's reasoning, Delaware law also "allow[s] owners of companies to hide behind 'nominees' to achieve secrecy and to avoid disclosure of ownership, capitalization and banking relationship." D.I. at ¶ 35.

Pontiaki's allegation that corporate registration in the UAE and BVI is in and of itself indicative of impropriety is thus nonsense, particularly in light of the minimal corporate disclosure requirements within the jurisdiction where this Court sits. Such an allegation ignores the public policy of the presumption of corporate separateness and the deference given by courts of the United States to the laws and courts of foreign countries. Further, Pontiaki has been able to access several corporate documents filed by the defendants, as evidenced by Exhibits A, B, and C of Pontiaki's second amended complaint, which itself refutes Pontiaki's notion that corporate records in those jurisdictions are secret.

## E.  Failure To Observe Corporate Formalities and Mere Facade Of The Dominant Stockholder

Pontiaki combines the alleged failure to observe corporate formalities and mere facade of the dominant stockholder into one factor. None of the allegations in this section of the second amended complaint plausibly allege either of these factors. As admitted by Pontiaki's counsel at the June 7 hearing, Pontiaki cannot allege that Taleveras DMCC failed to observe corporation formalities:

> THE COURT:  Are you alleging failure to observe
>                      corporate formalities?
>
> MR. SIMMS:  We don't know.  We can't allege that
>                      yet because we don't know.

Exhibit A, at 21:1-21:4.

18

The allegations at paragraphs 38 and 39 relate to the shared branding of the various entities.  D.I. 81 at ¶¶ 38, 39.  Yet again, neither of those paragraphs pertains to Taleveras DMCC.  Instead, the allegations address only Tadema, Taleveras BV and the Taleveras Group.  Further, the court in *Energy Marine* rejected the same argument and held that shared branding, trademarks, and shared internet domains, including email, are not enough to demonstrate an alter ego relationship between a group of companies; and thus, these paragraphs would not advance Pontiaki's claims even if they did pertain to Taleveras DMCC.  *Energy Marine*, 2016 WL 284432, *3 ("Common branding, trademarks, and shared internet domains may demonstrate a close business relationship, but do not necessarily suggest an alter-ego relationship.  Alone, shared branding is insufficient to support EMS's argument.") (internal citations omitted).  Taleveras BV is not listed on the webpage cited in paragraph 39, and thus the listed locations do not encompass all locations of every affiliate.

The allegations at paragraphs 40-41 are likewise irrelevant to an alter-ego analysis.  D.I. 81 at ¶¶ 40, 41.  It is not alone probative of an alter-ego relationship that an employee might move from one corporation to an affiliate corporation. Nor does representation in two different jurisdictions of companies allegedly in the same group by the offices of an international law firm in those respective jurisdictions alone evidence an alter ego relationship. The allegations in paragraphs 42-47 purport to describe an alleged takeover by Taleveras DMCC of Tadema and Taleveras BV.  D.I. 81 at ¶¶ 42-47.  In rejecting similar allegations by a plaintiff seeking to maintain a Rule B attachment of an alleged alter ego, the court in *Emeraldian* held:

> [T]he plaintiff attempts to show alter ego liablity by alleging that Guangzhou improperly uses Kam Kwan as a purchasing division of Guangzhou. . . . Again, these allegations do not describe any conduct that is necessarily inconsistent with proper regard for corporate formalities and for the separate corporate identities of Guangzhou and Kam Kwan. . . . To sustain a maritime attachment

> order based on such allegations would offend the presumption that
> corporate entities are distinct and subject the affiliates of
> companies that enter into maritime contracts to an unjustifiable
> risk of attachment of their assets in circumstances where their
> conduct was perfectly legitimate.

*Emeraldian*, 2009 WL 3076094, at *4-5.

Although the complaint in the *Emeraldian* had not alleged that Guangzhou did not compensate Kam Kwam for the purchases, Pontiaki's allegation that "upon information and belief, Taleveras DMCC offered no consideration for the acquisition of their business and customers" and no "apparent consideration" for the alleged fund transfers has no additional basis of support. D.I. 81 at ¶ 45, 47. Without some further basis, its allegation "on information and belief" that consideration of some kind was not exchanged is insufficient and the alleged transfers and alleged acquisitions fail to overcome the presumption of corporate separateness. *See MS "Taga Bay,"* 2009 WL 2222922, at *2. Further, as discussed in Section II above, the source and veracity of Exhibit D is impossible to establish given the lack of information describing this exhibit; the information contained in paragraph 44 does not actually establish that these funds moved through Taleveras BV's accounts, and Exhibit E does not name Taleveras DMCC. Thus, these allegations amount to nothing more than conclusory statements that lack plausibility.

<u>**CONCLUSION**</u>

For the reasons set forth above, the instant motion should be granted in all respects.

Dated: Wilmington, Delaware
      June 28, 2016

                              **THE ROSNER LAW GROUP LLC**

                              */s/ Frederick B. Rosner*

Frederick B. Rosner (DE 3995)
824 Market Street, Suite 810
Wilmington, DE 19801
Tel.: (302) 777-1111
rosner@teamrosner.com

**CLYDE & CO US LLP**
John R. Keough, III
The Chrysler Building
405 Lexington Avenue 16th Floor
New York, New York 10174
(212) 710-3900
John.Keough@clydeco.us

*Attorneys for Defendant*
*Taleveras Petroleum Trading DMCC*