# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PONTIAKI SPECIAL MARITIME ENTERPRISE,<br><br>         Plaintiff,<br><br>v.<br><br>TADEMA SHIPPING AND LOGISTIC INC., *et al.*,<br><br>         Defendants and Garnishees. | Civil Action No. 16-cv-247-LPS<br><br>**IN ADMIRALTY** |

### PONTIAKI SPECIAL MARITIME ENTERPRISE'S RESPONSE OPPOSING TALEVERAS PETROLEUM TRADING DMCC'S MOTION TO VACATE ORDER OF MARITIME ATTACHMENT

        YOUNG CONAWAY STARGATT & TAYLOR LLP

        /s/ *Timothy Jay Houseal*
        Timothy Jay Houseal (Del. Bar ID No. 2880)
        Jennifer Kinkus (Del. Bar ID No. 4289)
        Rodney Square
        1000 North King Street
        Wilmington, DE 19801
        (302) 571-6682
        thouseal@ycst.com
        jkinkus@ycst.com

J. Stephen Simms, *pro hac vice*         *Counsel for Plaintiff Pontiaki Special Maritime*
Marios J. Monopolis, *pro hac vice*       *Enterprise*
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
Tel:    (410) 783-5795
Fax:   (410) 510-1789
jssimms@simmsshowers.com
mjmonopolis@simmsshowers.com

July 8, 2016

# TABLE OF CONTENTS

| | |
|---|---|
| PRELIMINARY STATEMENT | 4 |
| FACTUAL SUMMARY | 4 |
| ARGUMENT | 5 |
|     I.   Standard of Review | 5 |
|     II.  The Second Amended Complaint Meets The Pleading Standards | 9 |
| CONCLUSION | 12 |

# TABLE OF CITATIONS

**Cases**

| | |
|---|---|
| *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) | 5-6 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2008) | 5, 7 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 5 |
| *Budisukma Permai SDN BHD v. N.M.K. Prods.*, 606 F. Supp. 2d 391 (S.D.N.Y. 2009) | 8 |
| *Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296 (S.D. Ala. 2012) | 5 |
| *Dixie v. Virga*, 2015 U.S. Dist. LEXIS 11429 (E.D. Cal. Jan. 29, 2015) | 6 |
| *Energy Marine Servs. v. DB Mobility Logistics AG*, 2016 U.S. Dist. LEXIS 7406 (D. Del. Jan. 22, 2016) | 7 |
| *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168 (2d Cir. 2008) | 7 |
| *Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001) | 8 |
| *Waldo v. Eli Lilly & Co.*, 2013 U.S. Dist. LEXIS 145772 (E.D. Cal. Oct. 7, 2013) | 6 |
| *Williamson v. Recovery L.P.*, 542 F.3d 43 (2d Cir. 2008) | 8 |

**Other Authorities**

| | |
|---|---|
| Fed. R. Civ. P. 8(a) | 5 |
| Fed. R. Civ. P. 12(b)(6) | |

## PRELIMINARY STATEMENT

Taleveras Petroleum Trading DMCC's ("Taleveras DMCC") Motion to Dismiss Pontiaki Special Maritime Enterprise's ("Pontiaki") Second Amended Complaint ("SAC") must be denied. The Motion to Dismiss attempts to create a far stricter pleading standard than actually applies, characterizes nearly every factual allegation as a legal conclusion, and ignores the deference given to the party opposing dismissal.

The SAC sets forth more than enough factual allegations which, when assumed to be true and when reasonable inferences are drawn therefrom, support the alter ego liability sought by Pontiaki here. The ultimate debtors to Pontiaki – Tadema Shipping And Logistic Inc. ("Tadema") and Taleveras Petroleum Trading BV ("Taleveras BV") – are alleged to be alter egos of Taleveras DMCC and the Taleveras Group.

The facts show that at least Taleveras BV and Taleveras DMCC, both subsidiaries of the Taleveras Group, are simply two names for the same, single corporate entity. The facts show that the Taleveras Group manipulates and controls these subsidiaries for its own benefit and to the detriment of their creditors. The facts show that considerations of equity necessitate denial of the Motion to Dismiss. In addition, reasonable inferences drawn from these facts further confirm the oneness of Taleveras BV and Taleveras DMCC.

Pontiaki is now entitled to discovery on its factual allegations that Tadema, Taleveras BV, and Taleveras DMCC are alter egos of one another and of the Taleveras Group.

## FACTUAL SUMMARY

Pontiaki incorporates by reference the statement of facts set forth in its Response Opposing Taleveras Petroleum Trading DMCC's Motion to Vacate Order of Maritime Attachment. D.I. 66 at 2.

**ARGUMENT**

**I.   Standard of Review**

Taleveras DMCC would have this Court transform the otherwise liberal pleading standards of Fed. R. Civ. P. 8(a) and the low threshold of Fed. R. Civ. P. 12(b)(6) into a "prove it or lose it" scenario where, in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must prove its entire case without the benefit of discovery at the pleading stage. This is not the pleading standard found in the Federal Rules or articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) or *Ashcroft v. Iqbal*, 556 U.S. 662 (2008).

> Rule 12(b)(6) is a low threshold for a plaintiff to overcome. This Court cannot and will not dismiss a claim merely because recovery on the merits at trial appears doubtful or dubious. *See, e.g.*, *Speaker*, 623 F.3d at 1380 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely") (citation omitted). A Rule 12(b)(6) motion is not a vehicle for forecasting the plaintiff's likelihood of success on the merits, and jettisoning claims based on such predictions.

*Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1302 (S.D. Ala. 2012).

The pleading standard applicable at this stage is that of plausibility. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). It is enough that sufficient facts are alleged from which "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is determined on a case-by-case basis and is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

There is no penalty assessed against factual allegations pled on information and belief:

> The *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal*, 129 S. Ct. at 1953, does not prevent a plaintiff from "pleading facts alleged 'upon information and belief" where the facts are peculiarly within the possession and

> control of the defendant, *see, e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The *Twombly* Court stated that " [a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." 550 U.S. at 556.

*Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010).[1]

> [O]ne can reasonably infer that district courts may properly consider allegations pled on information and belief in determining whether claims have been adequately pled under Rule 8. That an allegation is pled on information and belief is neither dispositive nor particularly germane. Per Iqbal and Twombly, the proper inquiry remains whether the plaintiff has presented a non-conclusory factual allegation. If so, the court may assume the allegation's "veracity and then determine whether [it] plausibly give[s] rise to an entitlement to relief." Iqbal, 556 U.S. at 679. This approach is supported by the text of Rule 11(b):
>
>> By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .
>
> As the court may rely on counsel's certification as to the likelihood of evidentiary support for any allegations pled on information and belief, it appears reasonable to grant such allegations the benefit of the doubt - so long as they are non-conclusory.

*Waldo v. Eli Lilly & Co.*, 2013 U.S. Dist. LEXIS 145772, at *15-16 (E.D. Cal. Oct. 7, 2013),

accord *Dixie v. Virga*, 2015 U.S. Dist. LEXIS 11429, at *13-15 (E.D. Cal. Jan. 29, 2015).

At this stage, all of the factual allegations in Pontiaki's SAC must be viewed as true – even those allegations pled on information and belief – and in the light most favorable to

---

[1] The Second Circuit *Arista Records* case was decided in 2010, one year after the Southern District of New York's decision in *MS "Taga Bay" Gmbh & Co. Containerschiff KG v. Sa Indep. Liner Servs. Pty*, 2009 U.S. Dist. LEXIS 64639 (S.D.N.Y. July 24, 2009), and is controlling as to facts pled on information and belief.

01:18894621.1

Case 1:16-cv-00247-LPS   Document 86   Filed 07/08/16   Page 7 of 12 PageID #: 537

Pontiaki. *Iqbal*, 556 U.S. at 678; *Energy Marine Servs. v. DB Mobility Logistics AG*, 2016 U.S. Dist. LEXIS 7406, at *4 (D. Del. Jan. 22, 2016)[2]. "The issue for the court is 'not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Energy Marine*, 2016 U.S. Dist. LEXIS 7406 at *4 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, (1974)).

The Second Circuit has analyzed alter ego liability under Delaware law as follows:

> "[n]umerous factors come into play when discussing whether separate legal entities should be regarded as alter egos," *id.*, and "[t]he legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over- nor under-inclusive," *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 989 (Del. Ch. 1987). Stated generally, the inquiry initially focuses on whether "those in control of a corporation" did not "treat[] the corporation as a distinct entity"; and, if they did not, the court then seeks "to evaluate the specific facts with a standard of 'fraud' or 'misuse' or some other general term of reproach in mind," *id.*, such as whether the corporation was used to engage in conduct that was "inequitable," *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989) ("*Mobil Oil*") (internal quotation marks omitted), or "prohibited," *David v. Mast*, No. 1369-K, 1999 Del. Ch. LEXIS 34, 1999 WL 135244, at *2 (Del. Ch. Mar. 2, 1999), or an "unfair trade practice," *id.*, or "illegal," *Martin*, 10 Del. Ch. at 219, 88 A. at 615.
>
> > Simply phrased, the standard may be restated as: "whether [the two entities] operated as a single economic entity such that it would be inequitable for th[e] Court to uphold a legal distinction between them." *Mabon, Nugent & Co. [v. Texas American Energy Corp.*, No. CIV. A. 8578, 1990 Del. Ch. LEXIS 46, 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990)].
>
> *Harper*, 743 F. Supp. at 1085.

*NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 177 (2d Cir. 2008).

It is important to note the distinction between the pleading standard for alter ego allegations and the factors weighed by the Court in analyzing those allegations, a distinction

---

[2] *Energy Marine* is presently on appeal to the Third Circuit (Case No. 16-1394) and therefore is not the final or determinative word on the analysis of alter ego allegations and the factors considered by the Court.

01:18894621.1

7

glossed over by the Motion to Dismiss. The standard requires a showing "that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001). The factors – "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder" *id.* at 484-85 – are designed to assist the Court in its analysis of the allegations, but in and of themselves are not issue-determinative.

Pontiaki is unaware of any case law which requires a "magic number" of factors alleged to survive a motion to dismiss, and Taleveras DMCC has offered none. Instead, the case law suggests that each case stands on its own and that the Court, while considering these factors, must ultimately decide whether the entities in question are really a single enterprise. "This list [of factors] is not exhaustive, nor is there a minimum number of factors that must be satisfied. Rather, the guiding principle is whether piercing the corporate veil 'would achieve an equitable result.'" *Budisukma Permai SDN BHD v. N.M.K. Prods.*, 606 F. Supp. 2d 391, 399 (S.D.N.Y. 2009) (quoting *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008)).

> There is no set rule as to how many of these factors must be present to warrant piercing the corporate veil and courts have considered additional factors as well. Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil has been that liability is imposed when doing so would achieve an equitable result.

*Williamson*, 542 F.3d at 53. Much like admiralty law, analysis of alter ego claims is similarly grounded in principles of equity. When those equitable principles are applied here alongside the pleading standards, it becomes clear that dismissal is not warranted.

01:18894621.1

**II.     The Second Amended Complaint Meets The Pleading Standards**

Pontiaki's SAC meets the applicable pleading standards and should not be dismissed, particularly where no discovery has taken place. Enough facts have been alleged to show that it is plausible that Tadema, Taleveras BV, and Taleveras DMCC are alter egos of each other and of the Taleveras Group, which ultimately controls and dominates those other entities. The SAC paints as clear a picture as clear as possible of a web of companies (Tadema, Taleveras BV, and Taleveras DMCC), ultimately owned, operated, and controlled by the Taleveras Group, which are used interchangeably to do business. Because of the secretive nature of the Taleveras Group and its subsidiaries, many of the facts and evidence necessary to prove Pontiaki's allegations (even though at this stage no proof is required) are exclusively within the possession and control of the defendants.

The SAC alleges that Tadema and Taleveras BV were grossly undercapitalized, as evidenced by their winding up proceedings and their inability to pay multiple U.K. judgments entered against them. D.I. 81 at ¶¶ 22-23. The news that the winding up proceedings have now been discontinued has no bearing on the plausibility of Pontiaki's allegations. First, the U.K. judgments remain unsatisfied. Second, the timing of the supposed settlements which resulted in the discontinuation of the proceedings is suspect, coming only weeks after Pontiaki initiated this action. Third, it is not clear where Tadema and Taleveras BV suddenly found the money to settle the winding up proceedings; discovery will almost certainly confirm that the funds were provided by Taleveras DMCC and/or the Taleveras Group, which is further evidence supporting the alter ego relationship between Tadema, Taleveras BV, Taleveras DMCC, and the Taleveras Group. Fourth, the discontinuation of the winding up proceedings is not evidence that Tadema and Taleveras BV are now adequately capitalized or no longer insolvent.

The SAC also alleges that, in conjunction with the undercapitalization of Tadema and Taleveras BV, Taleveras DMCC and/or the Taleveras Group siphoned funds from those entities. Until the time of their winding up, Tadema and Taleveras BV were chartering vessels and shipping cargo to a variety of customers, including the garnishees named herein. Since they were not doing so for free, it is a reasonable inference that Tadema and Taleveras BV were being paid for their services. The SAC alleges that the Taleveras Group transferred business from Tadema and Taleveras BV to Taleveras DMCC without consideration, resulting in both siphoning (the loss of funds and accounts) and gross undercapitalization. D.I. ¶ 28.

Given that many of the facts necessary to prove, and not just show, an alter ego relationship are uniquely within the possession of the defendants, allegations concerning the failure to observe corporate formalities, nonfunctioning officers and directors, nonpayment of dividends, and absence of corporate records are necessarily made on information and belief. It is clear, however, that the defendants have consciously chosen to operate in jurisdictions with almost no corporate transparency. While this alone does not necessarily suggest an improper purpose, the fact remains that only the defendants know whether the corporate formalities have been observed and whether corporate records actually exist. Absent limited discovery, Pontiaki can do more than allege facts on information and belief that further support a finding of alter ego liability under these factors.

From the limited information that is available to Pontiaki, and which has been alleged in the SAC, it is reasonable to infer that Tadema, Taleveras BV, and Taleveras DMCC are nothing more than corporate facades for the Taleveras Group – and that Taleveras BV and Taleveras DMCC are effectively the same corporate enterprise. The Taleveras Group's CEO appears to exercise complete control over the various companies within the group, as evidenced by his

personal authorization on bank wiring instructions to pay the debts of *inter alia* Tadema. As alleged in the SAC, the Taleveras Group employs a single email domain for itself and its subsidiaries, does not distinguish its offices among its subsidiaries, and uses employees interchangeably across its subsidiaries. D.I. 81 at ¶¶ 38-40.

Import and bank records further confirm that Taleveras BV and Taleveras DMCC are indistinguishable except for their respective corporate domicile, and that the Taleveras Group is the puppet master behind both entities. The SAC alleges that in the midst of Taleveras BV's winding up proceedings, its business operations and customer relationships were mysteriously transferred or taken over by Taleveras DMCC. *Id.* at ¶¶ 42-43. The SAC further alleges that, despite Taleveras BV's cessation of operations after September 2015, funds moved through Taleveras BV's Deutsche Bank account to pay for Taleveras DMCC business. *Id.* at ¶ 44. Finally, the SAC alleges that Mr. Sanomi and the Taleveras Group essentially used subsidiaries like Tadema, Taleveras BV, and Taleveras DMCC to move funds around various group entities without consideration. *Id.* at ¶ 47.

Several reasonable inferences can be drawn from the facts alleged in the SAC:

- The timing of the winding up petitions and the re-domiciling of Tadema and Taleveras BV was orchestrated by the Taleveras Group for the purpose of evading those entities' creditors;

- The replacement of Taleveras BV by Taleveras DMCC (as evidenced by import records) after the winding up petitions in a large number of commercial transactions is evidence of the singleness of these two corporate entities;

- The continued flow of funds through the bank accounts of an allegedly insolvent entity (Taleveras BV) at the direction of the Taleveras Group is evidence of domination and control of the subsidiaries by the parent; and,

- The purpose behind these corporate movements orchestrated by the Taleveras Group is to avoid payment of lawful debts and obligations;

These inferences, coupled with the factual allegations set forth in the SAC, are more than sufficient to meet the applicable pleading standards and to warrant denial of Taleveras DMCC's Motion to Dismiss.

## CONCLUSION

The Court can reasonably infer from the facts pled that Taleveras BV and Taleveras DMCC are the same company for all intents and purposes and are alter egos of the Taleveras Group.

WHEREFORE, for the reasons stated herein, Pontiaki respectfully requests that the Court deny Taleveras DMCC's Motion to Dismiss and grant such other further relief as is just and proper.

YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ *Timothy Jay Houseal*
Timothy Jay Houseal (Del. Bar ID No. 2880)
Jennifer Kinkus (Del. Bar ID No. 4289)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6682
thouseal@ycst.com
jkinkus@ycst.com

J. Stephen Simms, *pro hac vice*
Marios J. Monopolis, *pro hac vice*
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
Tel:   (410) 783-5795
Fax:   (410) 510-1789
jssimms@simmsshowers.com
mjmonopolis@simmsshowers.com

*Counsel for Plaintiff Pontiaki Special Maritime Enterprise*

July 8, 2016