IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PONTIAKI SPECIAL MARITIME ENTERPRISE, )
)
      Plaintiff, )
  v. ) Civ. No. 16-247-LPS
)
TALEVERAS GROUP, ) **IN ADMIRALTY**
TADEMA SHIPPING AND LOGISTIC INC., )
TALEVERAS PETROLEUM TRADING B.V., )
and )
TALEVERAS PETROLEUM TRADING DMCC, )
)
      Defendants. )

Timothy J. Houseal, Jennifer Kinkus, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, DE.

J. Stephen Simms, Marios J. Monopolis, SIMMS SHOWERS LLP, Baltimore, MD.

    Attorneys for Plaintiff.

Frederick B. Rosner, THE ROSNER LAW GROUP LLC, Wilmington, DE.

John R. Keough, III, CLYDE & CO US LLP, New York, NY.

    Attorneys for Defendant Taleveras Petroleum Trading DMCC.

**MEMORANDUM OPINION**

August 26, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

**I.    INTRODUCTION**

Pontiaki Special Maritime Enterprise ("Pontiaki" or "Plaintiff") filed suit against Taleveras Group, Tadema Shipping and Logistic Inc. ("Tadema"), Taleveras Petroleum Trading B.V. ("BV"), and Taleveras Petroleum Trading DMCC ("DMCC") (collectively "Defendants"). Pontiaki alleges breach of maritime contract and seeks maritime attachment and garnishment. (D.I. 81 at ¶¶ 48-55) The Court has jurisdiction pursuant to 28 U.S.C. § 1333. Before the Court is a motion to dismiss filed by DMCC pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (D.I. 85) For the reasons set forth below, the Court will deny the motion.

**II.   BACKGROUND**

Pontiaki's claim arises out of a charter agreement allegedly canceled by Tadema. (D.I. 81 at ¶ 13) Pontiaki obtained judgments against Tadema and BV in the High Court of Anguilla, British West Indies. (*Id.* at ¶ 20) Prior to the entry of judgment, Tadema and BV re-domiciled from the British West Indies to the British Virgin Islands, shortly before winding up petitions were filed against them in Anguilla. (*Id.* at ¶¶ 16-18) The Complaint further alleges that the Taleveras Group "is controlled by Nigerian billionaire Igho Charles Sanomi II." (*Id.* at ¶ 6)

Pontiaki alleges that DMCC has taken over Tadema's and BV's business and customers without consideration. (*Id.* at ¶ 45) Pontiaki also claims that DMCC, Tadema, and BV are alter egos of each other and controlled by Defendant Taleveras Group. (*Id.* at ¶¶ 8, 46)

DMCC filed motions to vacate an Order Granting Writ of Maritime Garnishment, to dismiss the complaint, and to strike the First Amended Complaint. (D.I. 58, 69) After a hearing

on June 7, 2016 (*see* D.I. 78), the Court denied the motion to vacate and motion to strike, and denied the motion to dismiss without prejudice to renew (*see* D.I. 76). Plaintiffs filed a Second Amended Complaint on June 17, 2016. (D.I. 81) Subsequently, on June 28, 2016, DMCC filed the pending motion to dismiss. (D.I. 85) The Court heard oral argument on July 26, 2016. (*See* D.I. 94 ("Tr."))

III. **LEGAL STANDARDS**

    A. **Motion to Dismiss**

Evaluating a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation

that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (internal quotation marks omitted). "We do not inquire whether a plaintiff will ultimately prevail when considering a motion to dismiss, only whether the plaintiff is entitled to offer evidence to support his or her claims." *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010).

Evaluating a motion to dismiss is "a context-specific task that requires the . . . court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false." *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B. Alter Ego Liability

"[I]n order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the . . . corporations actually functioned as a single entity and should be treated as such." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001). The Third Circuit test for alter ego liability typically involves consideration of eight factors: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Id.* at 484-85. In addition, "the situation must present an element of injustice or fundamental

3

unfairness, but a number of these factors can be sufficient to show such unfairness." *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981) (internal quotation marks omitted). While "[t]he plaintiff must . . . prove that the corporate form was abused, with a showing akin to fraud," *Energy Marine Servs., Inc. v. DB Mobility Logistics AG*, 2016 WL 284432, at *3 (D. Del. Jan. 22, 2016), the Third Circuit "does not require proof of actual fraud as a prerequisite for piercing the corporate veil," *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003). Moreover, "no single factor could justify a decision to disregard the corporate entity, but . . . some combination of them [is] required, and . . . an overall element of injustice or unfairness must always be present . . . ." *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988).

## IV.   DISCUSSION

For the reasons stated below, the Court will deny DMCC's motion to dismiss. The Court finds that Pontiaki has made sufficient factual allegations to support its theory that Taleveras Group controls the other Defendants. The Court also finds that Pontiaki's allegations made on information and belief are appropriate to consider. Finally, the Court finds that Pontiaki has sufficiently pled the factors that, if proven, establish alter ego liability, unlike the plaintiff in *Energy Marine*.

### A.   Taleveras Group

In its Second Amended Complaint, Pontiaki names an entity called the "Taleveras Group," allegedly controlled by Nigerian billionaire Igho Charles Samoni II. (D.I. 81 at ¶ 8) Pontiaki's theory is that Taleveras Group "manipulates and controls [Tadema and BV] for its own benefit and to the detriment of their creditors," and that these entities are all alter egos of

each other. (D.I. 86 at 4) For the reasons set forth below, the Court finds that Pontiaki states a plausible claim that Defendants are alter egos of each other and controlled by Taleveras Group.

B. **Allegations Made on Information and Belief**

DMCC argues that Pontiaki's allegations made on information and belief are insufficient to make out a plausible alter ego claim. (D.I. 85 at 9) A plaintiff may plead based on information and belief "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control – so long as there are no boilerplate and conclusory allegations and plaintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 2016 WL 2893844, at *4 (3d Cir. May 18, 2016) (internal quotation marks omitted).

The Court finds that, because much of the relevant information is in Defendants' control, and because Pontiaki has supported its theory with sufficient factual allegations and exhibits, the pleadings made on information and belief are appropriate and will be considered in evaluating the motion to dismiss.

C. **Alter Ego Liability**

The Court finds that Pontiaki alleges sufficient facts to permit a reasonable inference, taking the allegations as true, that DMCC is subject to alter ego liability. Pontiaki alleges six of the eight alter ego factors: (1) gross undercapitalization; (2) insolvency of debtor corporation; (3) siphoning of funds from the debtor corporation; (4) nonfunctioning of officers and directors; (5) absence of corporate records; and (6) the corporation as a facade. (D.I. 81 at ¶¶ 22-47) The

Court addresses each of these factors below.[1]

### 1. Gross undercapitalization

Pontiaki argues that gross undercapitalization is evident from the winding up and liquidation proceedings against Tadema and BV, as well as their failure to pay Pontiaki's judgment against them in the Anguilla High Court. (D.I. 81 at ¶¶ 20-22) Pontiaki further alleges that judgments obtained by other creditors remain outstanding against Tadema. (*Id.* at ¶ 23) Pontiaki argues that Taleveras Group, despite being well-capitalized, deliberately "tanked" Tadema and BV in order to avoid paying the judgments those entities owed to their creditors, including Pontiaki. (Tr. at 28-29)

DMCC responds that, because winding up proceedings against Tadema and BV were allegedly settled, Pontiaki cannot state a claim for gross undercapitalization. (D.I. 85 at 10; Tr. at 11) DMCC further argues that the judgments owed to other creditors are "irrelevant to this proceeding." (D.I. 85 at 13; Tr. at 11) Pontiaki counters that the timing of the settlement payment is curious, coming not long after Pontiaki had brought this action, even though the insolvency proceedings had been pending for months prior to the commencement of this case. (Tr. at 30)

The Court finds that Pontiaki's allegations regarding the insolvency and liquidation proceedings, taken as true and considered in the overall context of Defendants' alleged activities, including the shifting of business to DMCC, permit a reasonable inference of gross undercapitalization.

---

[1] Pontiaki does not allege nonpayment of dividends, and it has acknowledged that it is unable at this stage to allege failure to observe corporate formalities. (*See* D.I. 78 at 21)

6

### 2. Insolvency of debtor corporation

Pontiaki alleges that the winding up and liquidation proceedings described above are also evidence of insolvency, as are Defendants' actions during that period. BV allegedly began using DMCC's address on bills of lading around the time of the winding up proceedings. (D.I. 81 at ¶ 33) Tadema and BV also made their re-domiciling moves around the same time, allegedly to evade the insolvency proceedings and their creditors. (*Id.* at ¶ 34) DMCC argues that Pontiaki's allegations regarding the re-domiciling actions are "misleading, conclusory statements with no basis in fact." (D.I. 85 at 14)

The Court finds that the commencement of the winding up and liquidation proceedings, as well as Defendants' alleged actions during that time, permit a reasonable inference of insolvency. The Court agrees with Pontiaki that such an inference can be drawn notwithstanding the apparent settlement of the winding up proceedings. (*See* D.I. 86 at 9)

### 3. Siphoning of funds from the debtor corporation

Pontiaki alleges that Taleveras Group transferred business from Tadema and BV to DMCC, resulting in gross undercapitalization and siphoning of funds and accounts. (D.I. 81 at ¶ 28; D.I. 86 at 10) DMCC claims that Pontiaki does not allege siphoning of funds at all, and it calls Pontiaki's allegations conclusory. (D.I. 85 at 10-11).

As discussed above, the Court finds that Pontiaki has sufficiently pled gross undercapitalization. Together with Pontiaki's other factual allegations, this permits a reasonable inference that Taleveras Group siphoned funds from Tadema and BV to DMCC. Import records indicate that DMCC took over Tadema's and BV's business as shipper, with no change to the consignees or products shipped. (D.I. 81 at ¶¶ 42-43 and Ex. D) This transfer of business and

customers was allegedly made without consideration. (*Id.* at ¶ 45) The Court finds that these allegations are sufficient to allow an inference that Taleveras Group siphoned funds.

### 4. Nonfunctioning of officers and directors

Pontiaki alleges that a corporate resolution was signed by Sanomi's deceased father. (*Id.* at ¶ 31) It suggests that if a deceased person is purportedly signing corporate documents, then it follows that something is amiss with respect to the functioning of officers and directors.

DMCC insists that the person identified in the operative complaint as Sanomi's father is actually his brother. (D.I. 85 at 2) The passport attached as an exhibit to DMCC's opening brief identifies a "Dickens Ogheneruemu Sanomi" (*see id.* Ex. C), while the complaint identifies a man named "Dickens Ogheneruemu **Patrick** Sanomi" (*see* D.I. 81 at ¶ 31) (emphasis added).

Given the ambiguity over the identity of this individual, the Court finds that Pontiaki's allegations, taken as true (as the Court must at this point), support a reasonable inference of nonfunctioning officers and directors.

### 5. Absence of corporate records

Pontiaki alleges that Defendants have deliberately chosen to operate in the United Arab Emirates and the British Virgin Islands, jurisdictions that do not require corporate disclosures. (*Id.* at ¶ 35) DMCC argues that this is not evidence of impropriety, asserting that the State of Delaware could also be described as a "corporate friendly" jurisdiction. (D.I. 85 at 16-18)

While DMCC is correct in noting that Defendants' mere presence in particular jurisdictions cannot alone establish the absence of corporate records, the Court finds that the overall context and timing of Tadema's and BV's decisions to relocate – considering the pending insolvency and liquidation proceedings as well as the unpaid judgments – allows for a reasonable

inference that Defendants acted to limit access to corporate records.

      6.      **The corporation as a facade**

Pontiaki alleges that Defendants share common ownership and direction under Taleveras Group and its owner, Igho Charles Sanomi II. (D.I. 81 at ¶ 27) The companies allegedly share addresses and email domains. (*Id.* at ¶¶ 37-38) Employees appear to move freely from one company to another within the Taleveras Group. (*Id.* at ¶ 40) Morever, Taleveras Group's website appears to present the group as a single entity.[2] (D.I. 81 at ¶¶ 38-39) The companies have retained the same law firm. (*Id.* at ¶ 41) Also, funds continued to move through BV's bank account, even after it had stopped doing business (*id.* at ¶ 44), and Sanomi freely passed money among the members of Taleveras Group, personally authorizing wire transfers. (*Id.* at ¶ 47; D.I. 86 at 10-11) Pontiaki claims that the only payment it has received from Defendants was made by "Taleveras Group of Companies Ltd.," which appears to have Mr. Sanomi as its Chief Executive Officer and an address in Nigeria. (Tr. at 22; D.I. 81 Ex. E)

Pontiaki argues that Taleveras Group is the entity exercising control over the other Defendants and that Pontiaki has suffered harm as a result, in the form of not being paid what it is owed by Tadema and BV. (Tr. at 24-25) The effect of Defendants' alleged maneuvering has been to divert funds to DMCC that would have been paid to Tadema and BV, keeping those

---

[2] At the hearing, Pontiaki's counsel handed the Court a printout of pages he represented were printed off of this website. (*See* Tr. at 18-19) DMCC objected to the Court considering these pages. (*See id.*) The Court hereby SUSTAINS DMCC's objection and the Court has not considered the specific pages handed to it at the hearing. However, the Court has taken as true – as it must at this stage – the operative complaint's allegations that the website http://www.taleveras.com/about/ contains a description of Taleveras "as a single business entity" and that "[t]he Taleveras Group website also lists (http://www.taleveras.com/contact/our-locations) without any distinction of entity." (D.I. 81 at ¶¶ 38-39)

funds out of the reach of judgment creditors like Pontiaki. (*Id.* at 26)

DMCC argues that common ownership, branding, trademarks, and Internet domains are not enough to establish an alter-ego relationship. (D.I. 85 at 19) It likewise argues that Defendants' apparent interchangeable use of employees and retention of the same law firm is not alone probative of an alter ego relationship. (*Id.*)

DMCC correctly notes that such commonalities alone are insufficient to pierce the corporate veil. (*Id.* at 11) However, Pontiaki makes factual allegations for several factors which together are enough to state a plausible claim. The Court finds that Pontiaki's allegations, taken as true and considered in their entirety in the context of events such as the winding up proceedings and re-domiciling actions, permit a reasonable inference that DMCC, along with Tadema and BV, are merely facades of Taleveras Group. Further, Pontiaki has pled sufficient facts at this stage to show an element of unfairness and injustice in Defendants' alleged actions.

### D. Comparison to *Energy Marine*

This Court recently granted a motion to dismiss in an admiralty case with similar facts. *See Energy Marine*, 2016 WL 284432, at *5. In *Energy Marine*, the plaintiff alleged that the defendant companies were organized in a multi-layered ownership structure, with common branding and logos, employee overlap, and close logistical coordination. *See id.* at *1.

The Court found that the *Energy Marine* plaintiff alleged only two of the eight alter ego liability factors: failure to observe corporate formalities and the corporation as a facade. *See id.* at *3. The Court further found that the plaintiff's allegations regarding these factors established nothing more than a close relationship and coordination among the defendants. *See id.* The Court granted the motion to dismiss because the plaintiff did not make sufficient factual

allegations to support its theory of an operation consisting of nested sham corporations. *See id.*

Here, Pontiaki has pled similar allegations of common branding and employee overlap, but it has also alleged specific actions taken by Defendants, such as re-domiciling and transferring business to DMCC when judgments, liquidations, and winding up proceedings were pending against Tadema and BV. Importantly, Plaintiff further alleges that the one payment it ever received from any Defendant was in the name of Taleveras Group – even though Plaintiff's contract was with Tadema and BV. (*See* Tr. at 20 (citing D.I. 81-2 at 32)) Plaintiff also alleges that Defendant Taleveras Group controls all of the other Defendants, all of which are alter egos of one another. The timing and context of these actions permit a reasonable inference that Taleveras Group controlled the other entities to Pontiaki's detriment. The allegations, viewed in the light most favorable to Pontiaki, allow the Court to plausibly infer that Defendants acted to deny Pontiaki the money owed on judgments against Tadema and BV by shifting their business to DMCC and moving them to a new jurisdiction. Again, as already noted, Pontiaki has pled sufficient facts at this stage to show an element of unfairness and injustice in Defendants' alleged actions.

Hence, unlike in *Energy Marine*, here Pontiaki's allegations are sufficient.

## V.   CONCLUSION

The Court will deny DMCC's motion to dismiss. An appropriate Order follows.